# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SAS INTERNATIONAL, LTD.,

                    Plaintiffs,

      vs.

GENERAL STAR INDEMNITY
COMPANY,

                Defendant.

Case No.:

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446, General Star Indemnity Company ("General Star") hereby removes to this Court the proceeding commenced by Plaintiff SAS International, Ltd. ("SAS") in the Superior Court for the County of Bristol of the Commonwealth of Massachusetts. In support of this Notice of Removal, General Star states on knowledge, information, and belief:

## BRIEF BACKGROUND

1.      SAS operates "a real estate business in Fall River, Massachusetts." *See* Compl. ¶ 8. **(Exhibit A.)** SAS alleges that it suffered commercial property loss due to the COVID-19 pandemic and claims that this loss should be covered under a commercial property insurance policy issued by General Star to SAS. *See* General Star Policy **(Exhibit B).**

2.      SAS states that "[o]ver the last several months, it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus. COVID-19 is a physical substance, that it lives on and is active on inert physical surfaces and is emitted into the air. The presence of COVID-

1

19 renders physical property in their vicinity unsafe and unusable, and SAS and its tenants were forced to suspend or reduce business at the covered premises." *Id.* ¶¶ 16-17.

3.     SAS further states that "in response to the COVID-19 pandemic, civil authorities in Massachusetts issued orders requiring the suspension of business at various establishments, including SAS's premises (the "Governmental Orders")...  The Governmental Orders have required and continue to require SAS to cease and/or significantly reduce operations at, and have prohibited and continue to prohibit access to, its premises." *Id.* ¶¶ 18-19.

4.     SAS notified General Star of its claimed loss "[o]n or about July 20, 2020" and "provided all details surrounding the loss" on August 25, 2020. *Id.* ¶ 20.

5.     General Star sent SAS a letter dated September 3, 2020 wherein "General Star, through counsel, 'tentatively concluded' that SAS's claims are not covered under the Policy." *Id.* ¶ 21 (**Exhibit C**).

6.     In its September 3, 2020 coverage letter, General Star denied coverage under the Building and Personal Property Coverage Form and the Business Income (and Extra Expense) Coverage Form.  General Star also stated that there was no Civil Authority or so-called "sue and labor" coverage available.  General Star noted that, among other things, SAS had failed to show "direct physical loss of or damage to" property, which is a prerequisite for coverage under the Policy.

**7.**     SAS disagrees with General Star's coverage position set forth in General Star's September 3, 2020 letter.  Compl. ¶ 22.  This lawsuit followed.

**REMOVAL IS TIMELY**

8.     This Notice of Removal has been timely filed.  Plaintiff SAS brought this action against Defendant General Star in the Superior Court for the County of Bristol of the Commonwealth of Massachusetts by filing a Complaint dated September 11, 2020, which was docketed as Case No. 2073CV00608 (the "Complaint").

9.     General Star first received a copy of the Complaint on September 15, 2020. General Star has not been served but has accepted service.

10.     This Notice of Removal has been filed with this Court within thirty (30) days of General Star's receipt of the complaint on September 15, 2020, "through service or otherwise, of a copy of the initial pleadings setting forth in the claim for relief upon which such action or proceeding is based," as provided by 28 U.S.C. § 1446(b).

**COMPLETE DIVERSITY OF CITIZENSHIP EXISTS**

11.     The basis for removal is diversity of citizenship jurisdiction.  Pursuant to 28 U.S.C. § 1332(a), United States District Courts have original jurisdiction over all civil actions in which the matter in controversy is in excess of $75,000, exclusive of interest and costs, and in which complete diversity of citizenship exists between all plaintiffs and all defendants.

12.     There is complete diversity of citizenship.  As acknowledged in its Complaint, Plaintiff SAS is a corporation organized under the laws of Massachusetts with its principal place of business in Massachusetts.  Accordingly, under 28 U.S.C. § 1332(c)(1), SAS is a citizen of Massachusetts.

13.     Defendant General Star is a corporation organized under the laws of Delaware[1] with its principal place of business in Connecticut.  Accordingly, under 28 U.S.C. § 1332(c)(1), General Star is a citizen of Delaware and Connecticut.

14.     Thus, this civil action is between citizens of different states.

**THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

15.     This is a civil action in which the matter in controversy exceeds $75,000, exclusive of interest and costs.

16.     SAS seeks insurance coverage under Commercial Lines Policy No. IMA346757A, which was issued by General Star to SAS for the policy period September 16, 2019 to September 16, 2020 (the "Policy").

17.     The Complaint notes: "[t]he Policy includes a Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form."  *See* Complaint ¶ 8.

18.     The Policy's Building and Personal Property coverage limit is $4,285,000.  *See* Policy, Commercial Property Coverage Part Declarations.

19.     The Policy's Business Income coverage limit is $60,000. *See* Policy, Commercial Property Coverage Part Declarations.  *Id.*

20.     SAS seeks a declaration that the policy General Star issued to SAS provides coverage for SAS's claimed losses associated with the COVID-19 pandemic under the Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form. Specifically, SAS alleges:

> SAS is presently in genuine doubt and uncertain as to its rights, status, and privileges, under the Policy issued by General Star, and specifically, its rights,

---

[1] The Complaint alleges on information on belief that General Star is incorporated in Connecticut. This is incorrect but does not materially affect General Star's right to remove this case to federal court based on diversity of citizenship.

status, and privileges and General Star's obligations to provide coverage for the losses caused by COVID-19 and the COVID-19 governmental authority orders resulting in the suspension of SAS business operations for *loss of business income, business interruption, extra expense, civil authority, all risk coverage, and all other coverage extensions up to the limits of the Policy per occurrence.*

SAS has a bona fide, actual and present need for a declaration and construction of the Policy, its status, rights, and privileges, and General Star's obligation to provide coverage to SAS under the Policy, *including its primary coverage and all coverage extensions, including the applicable coverage triggers under the Policy*.

*Id*. ¶¶ 49-50 (emphasis added).

21.     SAS requests a "declaration that (1) the Policy covers SAS's claims up to the policy limits per occurrence; and (2) that no exclusion in the Policy applies to bar or limit coverage for SAS's claims." *Id.*, Relief Requested.

22.     SAS also brings a breach-of-contract claim regarding General Star's coverage denial of coverage for its claimed losses related to the COVID-19 pandemic.

23.     SAS therefore seeks the full combined limit of the Policy.

24.     Thus, the jurisdictional amount required under 28 U.S.C. § 1332 is satisfied.

## ALL PROCEDURAL REQUIREMENTS HAVE BEEN MET

25.     Pursuant to 28 U.S.C. § 1446(a), General Star represents that apart from the Complaint and Summons, it has received no other process, pleadings, motions or orders in this action.

26.     Pursuant to 28 U.S.C. § 1446, General Star is filing with this Notice of Removal a copy of all process, pleadings, and orders it has received.  Copies of all such papers are attached as Exhibit A.

27.     Pursuant to Local Rule 81.1(a), General Star will request from the clerk of the Bristol County Superior Court certified or attested copies of all records and proceedings in the state court, and certified or attested copies of all docket entries therein, including a copy of this

Notice of Removal, and will file them with this Court within twenty-eight (28) days after the filing of this Notice of Removal.

28.     Accordingly, jurisdiction over the subject matter of this case is conferred by 28 U.S.C. §§ 1332(a)(1) and removal is proper pursuant to 28 U.S.C. § 1441(a).

29.     A copy of this Notice of Removal also has been served upon SAS and forwarded for filing with the Clerk of the Superior Court of Bristol County, Massachusetts to effect removal of this action to the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 1446(d).

THEREFORE, having established all of the requirements for removal under 28 U.S.C. §§ 1441 and 1446, including all jurisdictional requirements established by 28 U.S.C. § 1332, General Star hereby removes this case to the United States District Court for the District of Massachusetts.

Respectfully submitted,

By: _/s/ William P.Rose_____

Dated: October 15, 2020

**Of Counsel:**
Benjamin C. Eggert
Joseph W. Gross
Wiley Rein LLP
1776 K Street, NW
Washington, DC  20006
Telephone:  (202) 719-7000
Email:      beggert@wileyrein.com
            jgross@wileyrein.com

William P. Rose (BBO No. 557000)
Melick & Porter, LLP
One Liberty Square
Boston, MA 02109
Telephone:  617-523-6200
Email:  wrose@melicklaw.com

*Counsel for Defendant General Star Indemnity Company*

6

CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of October, 2020, I caused to be served by e-mail

the foregoing Notice of Removal upon the following:

        Eric E. Renner, Esq.
        Renner Law, LLC
        50 South Main Street, Suite 202
        Providence, RI 02903
        erenner@rennerlawllc.com

        *Counsel for Plaintiff SAS International, Ltd.*

        /s/ William P. Rose
        William P. Rose

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS                                  SUPERIOR COURT DEPARTMENT
                                             OF THE TRIAL COURT

|  |  |
|---|---|
| SAS INTERNATIONAL, LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> GENERAL STAR INDEMNITY COMPANY, <br><br> Defendant. | C.A. No. <br><br> PLAINTIFF DEMANDS TRIAL BY JURY |

**COMPLAINT**

Plaintiff, SAS International, Ltd. ("SAS"), brings this action against defendant, General

Star Indemnity Company ("General Star"), and alleges as follows:

**NATURE OF THE CASE**

1.      This action seeks a declaratory judgment, pursuant to Mass. Gen. Laws ch. 231A,

§ 1 *et seq.*, to construe and declare the rights, duties, status and legal relations of the parties as

the named insureds and insurer under a commercial property insurance policy issued by General

Star to SAS, Policy No. IMA346757A (the "Policy").  As described herein, this action seeks a

declaratory judgment that affirms that COVID-19 and the emergency COVID-19 governmental

authority orders to issued stop the spread of the outbreak trigger coverage under the Policy, have

caused physical loss of or damage to covered property, provide coverage for civil authority

orders resulting in the suspension or curtailment of SAS's business operations, and finds that

General Star is liable for the losses suffered by SAS up to the limits of the Policy.  Additionally,

this action seeks damages for General Star's breach of its contractual obligation under the all-risk

1

Policy to indemnify SAS for business losses and extra expenses, and related losses resulting from COVID-19 and the actions taken by governmental authorities to prevent the spread of the COVID-19 outbreak.

## PARTIES

2.      SAS is a Massachusetts corporation with a principal place of business in Fall River, Massachusetts.

3.      On information and belief, General Star is a Connecticut corporation with a principal place of business at 120 Long Ridge Road, Stamford CT 06902-1843.  General Star solely (100%) underwrote, subscribed, issued and delivered the Policy to SAS, protecting SAS from all risks unless specifically excluded with effective dates from September 16, 2019 through September 16, 2020.

4.      At all relevant times, General Star has done business in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to Mass. Gen. Laws ch. 212, §§ 3, 4 and Mass. Gen. Laws ch. 231A, §§ 1, 2.

6.      This Court has personal jurisdiction over General Star *inter alia* by virtue of its continuous and systematic contacts within Massachusetts, by virtue of General Star transacting, soliciting and conducting business in Massachusetts through its employees, agents, and/or sales representatives, by virtue of General Star being authorized to do business in Massachusetts and its appointment of the Massachusetts insurance commissioner as agent for the service of process, and because it issued and delivered the Policy to SAS in Massachusetts insuring property and risks in Massachusetts.

7.      Venue is proper pursuant to M.G.L. c. 223, § 1 and M.G.L. c. 214, § 5.

## STATEMENT OF FACTS

### A.    The Policy

8.      SAS purchased an "all-risk" property insurance policy (i.e., the "Policy") from General Star for its real estate business in Fall River, Massachusetts.  All-risk policies cover all risks of loss except for risks that are expressly and specifically excluded.  The Policy includes a Building and Personal Property Coverage Form and Business Income (and Extra Expense) Coverage Form.  General Star issued SAS the Policy, which was in effect during the applicable time period.

9.      The Policy provides that General Star will pay for "direct 'loss' unless the 'loss' is excluded or limited" therein.   A "Covered Cause of Loss" is defined to mean "direct physical loss."  The Policy does not define "physical loss."  The Policy also does not include, and is not subject to, any exclusion for losses caused by viruses or communicable diseases.  A loss, as defined above, is a prerequisite to invoke the different types of coverages sought in this claim. These coverages are set forth below.

10.     First, the Policy provides for Business Income coverage.  Under this coverage, General Star agreed to:

> pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'.  The 'suspension must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

11.     Second, the Policy provides for Extra Expense coverage.  Under this coverage, General Star agreed to pay necessary Extra Expense that its insureds sustain during the "period of restoration" that the insureds would not have sustained if there had been no direct loss to property caused by or resulting from a Covered Cause of Loss.  "Extra Expense" includes

expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

12.     Third, the Policy provides for Extended Business Income coverage.  Under this coverage, General Star agreed to pay "Rental Value" equal to the rents SAS would have received during the period of restoration.  "Loss of 'Rental Value' must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss."

13.     Fourth, the Policy provides "Civil Authority" coverage.  This coverage applies to:

> the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises [when] … [a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage [and when] … [t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage[.]

14.     Finally, the Policy provides what is commonly known as "Sue and Labor" coverage.  In relevant part, the Policy requires the insured to "take all reasonable steps to protect the Covered Property from further damage," and to keep a record of expenses incurred to protect the Covered Property for consideration in the settlement of the claim.  The Policy does not exclude or limit losses from viruses, pandemics, or communicable diseases.

**B.     SAS's Claim**

15.     SAS filed a claim and seeks coverage under the Policy for losses caused by the Coronavirus ("COVID-19") pandemic and/or the emergency COVID-19 governmental authority orders to issued stop the spread of the outbreak.

16.     Over the last several months, it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured

4

properties with the virus.  COVID-19 is a physical substance, that it lives on and is active on

inert physical surfaces and is emitted into the air.

17.     The presence of COVID-19 renders physical property in their vicinity unsafe and

unusable, and SAS and its tenants were forced to suspend or reduce business at the covered

premises.

18.     Additionally, in response to the COVID-19 pandemic, civil authorities in

Massachusetts issued orders requiring the suspension of business at various establishments,

including SAS's premises (the "Governmental Orders").  Specifically:

- On March 23, 2020, while the Policy was in effect, in order to contain the spread of COVID-19, Governor Baker issued an emergency COVID-19 Order No. 13, which designated certain COVID-19 Essential Services, as defined in the Order, temporarily closed the brick-and-mortar premises of businesses and organizations that do not provide "COVID-19 Essential Services"—including SAS—and prohibited gatherings of more than 10 people.  Additionally, Governor Baker directed the Department of Public Health to issue a stay at home advisory outlining self-isolation and social distancing protocols.

- On March 31, 2020, April 28, 2020, and May 15, 2020, Governor Baker issued COVID-19 Orders No. 21, 30, and 32, respectively, which extended the period in which COVID-19 Order No. 13 would continue to restrict the operation of businesses and organizations that do not provide COVID-19 Essential Services.

- On May 18, 2020 and June 6, 2020, Governor Baker issued COVID-19 Order Nos. 33 and 37 respectively, which authorized the re-opening of certain brick-and-mortar premises designated as "Phase I" and "Phase II" enterprises, subject to the requirement that all such enterprises comply with certain workplace safety rules and standards designed to protect against the spread of COVID-19.

19.     The Governmental Orders have required and continue to require SAS to cease

and/or significantly reduce operations at, and have prohibited and continue to prohibit access to,

its premises.  As discussed below, both the presence of COVID-19 and the Governmental Orders

caused a direct physical loss to property at the premises by denying use of the covered property,

and by causing a necessary suspension of operations during a period of restoration.  Additionally,

COVID-19 and the Governmental Orders caused SAS loss of rental income (i.e., "Rental

Value") from its tenants.  SAS's losses are covered by the Business Income, Extra Expense, Extended Business Income-"Rental Value", Civil Authority, and Sue and Labor coverages discussed above.  SAS has provided General Star notice of its losses, but General Star has thus far refused coverage.

20.    On or about July 20, 2020 and August 25, 2020, SAS notified General Star of the loss, provided all details surrounding the loss, and permitted General Star with the opportunity to investigate and adjust the loss.  SAS further requested that General Star provide coverage and pay all benefits owed under the Policy for COVID-19 and the COVID-19 governmental suspension of business.

21.    By letters dated July 22, 2020 and September 3, 2020, General Star failed and refused to affirm coverage despite having a reasonable time and opportunity to do so.  In its September 3, 2020 letter, General Star, through counsel, "tentatively concluded" that SAS's claims are not covered under the Policy.

**C.    The Policy Provides Coverage for SAS's Claim**

    **1.    SAS Has Suffered a Direct "Physical Loss" Under the Policy**

22.    Based on its letters, General Star takes the position that SAS has not suffered a "physical loss" as required by the Policy.  General Star takes the position that "direct physical loss" requires actual, tangible, permanent, physical alteration of property.  That is, General Star suggests that the requirement of a tangible physical loss applies to—and precludes—each type of coverage sought in this claim.  No so.

23.    The terms "physical loss" and "physical damage" are the key phrases in the Policy and they are worded in the disjunctive.  That is, the Policy expressly covers "physical loss *or* "physical damage."  This necessarily means that either a loss or damage is required, and again "loss" is distinct from "damage."  Thus, to the extent General Star's focus on an actual

physical alteration would ignore the coverage for a "physical loss."   General Star could have defined "physical loss" and "physical damage," but it failed to do so.

24.     SAS has submitted a covered claim for direct physical loss.  First, because the Policy does not define a direct "physical loss" a Court interpreting the Policy would rely on the plain and ordinary meaning of the phrase.  The Merriam-Webster dictionary defines "direct" in part as "characterized by close logical, causal, or consequential relationship."  "Physical" is defined as "having material existence: perceptible especially through the senses and subject to the laws of nature."  "Loss" is "the act of losing possession" and "deprivation."

25.     Applying these definitions, SAS has adequately submitted a claim for a direct physical loss.  There is a causal relationship between both COVID-19 and/or the Governmental Orders and SAS's losses.  COVID-19 is a physical substance that it lives on and is active on inert physical surfaces and is emitted into the air.  COVID-19 attached to and deprived SAS of its property, making it unsafe and unusable, resulting in direct physical loss to the premises and property.  Additionally, the Governmental Orders caused SAS direct physical loss of covered property because SAS has been unable to use its building and property for their intended purpose and SAS has suffered loss of business income, each of which are listed as covered property under the Policy.  Accordingly, SAS has suffered a "direct physical loss" based on the plain and ordinary meaning of the phrase.

26.     Here, the Policy provides coverage for "physical loss of or damage."  General Star conflates "loss" and "damage" to argue that the Policy requires a tangible, physical alteration. General Star—and any Court considering the issues—must give meaning to both terms.

27.     SAS also has suffered "damage" to its property from COVID-19 under the relevant law.

28.     For these reasons, SAS alleges economic harm, and that harm is tethered to its physical loss caused by COVID-19 and/or the Governmental Orders.  As such, SAS submitted a claim for a direct physical loss under the Policy.

**2.      SAS Has Submitted a Covered Claim for Civil Authority Coverage**

29.     SAS has also submitted a covered claim for civil authority coverage.  General Star contends that civil authority coverage requires direct physical loss to property other than SAS's property and that, just as COVID-19 and/or the Governmental Orders are not causing direct physical loss to SAS's premises, it/they are not causing direct physical loss to other property.

30.     This argument fails for substantially the same reasons as discussed above.  SAS has suffered a physical loss, and such loss is applicable to other property.  Additionally, as outlined above, civil authorities issued closure and stay at home orders throughout Massachusetts (i.e., the Governmental Orders), which includes property other than SAS's premises.

31.     To the extent General Star argues that civil authority coverage requires that access to SAS's premises be prohibited by an order of Civil Authority, none of the aforementioned Governmental Orders prohibit access to SAS's premises.  Rather, the Governmental Orders required SAS's business and all other businesses that provide personal services to suspend operations.  Thus, because to these Governmental Orders, access was prohibited to such a degree as to trigger the civil authority coverage.  This is particularly true insofar as the Policy requires that the "civil authority prohibits access," but does not specify "all access" or "any access" to the premises.  For these reasons, SAS has submitted a covered claim for civil authority coverage.

### 3. SAS Has Submitted a Covered Claim for Sue and Labor Coverage

32. SAS has also submitted a covered claim for sue and labor coverage. This Policy provision imposes a duty on the insured to prevent further damage and to keep a record of expenses incurred in the event of a covered loss.

33. As General Star seemingly acknowledges in its September 3, 2020 letter, in the event of a covered loss, SAS can recover these expenses.

34. As discussed above, SAS has submitted a claim for a covered loss. Moreover, as a result of COVID-9 and in complying with the Governmental Orders and by suspending operations, SAS incurred expenses in connection with reasonable steps to protect Covered Property. Consequently, SAS has stated a claim for sue and labor coverage.

### D. None of the Policy Exclusions Apply to Bar Coverage

35. In its letters, General Star takes the position that it can rely on certain exclusions to deny coverage. For the following reasons, however, none of the exclusions apply here.

36. As a predicate matter, however, the Policy notably does not include any exclusion for losses caused by, for example, "virus," "pandemic," or "infectious disease," when exclusions including such language were available to General Star when it sold the Policy to SAS.

37. In fact, since 2006, an Insurance Services Office ("ISO") "virus" exclusion has been widely available for use by insurers. General Star made the decision not to include any such exclusion in its Policy. Under the law of most states, including Massachusetts, that decision prima facie prevents General Star from avoiding coverage for SAS's losses.

38. In any event, none of the other Policy Exclusions apply in this case.

39. First, General Star relies on the "Ordinance or Law" exclusion as a justification for its potential denial. On its face, the "Ordinance or Law" exclusion does not apply to SAS's

claim, which is predicated on the physical loss of property caused by COVID-19 and/or emergency governmental orders, not an ordinance or law.

40.     Even if the "Ordinance or Law" exclusion could apply to SAS's claim, which it cannot, the exclusion would be in irreconcilable conflict with the specific grant of Civil Authority coverage and, thus ambiguous and subject to construction in favor of SAS.

41.     Second, General Star relies on the "Governmental Action" exclusion, which excludes coverage for "[s]eizure or destruction of property by order of governmental authority. But none of the Governmental Orders ordered the "seizure" or "destruction" of SAS's property. Again, on its face, the "Governmental Action" exclusion does not apply to SAS's claim.

42.     Third, General Star relies on the "Fungus, Wet Rot, Dry Rot and Bacteria" exclusion as a justification for its potential denial. Again, though, on its face the "Fungus, Wet Rot, Dry Rot and Bacteria" exclusion does not apply to SAS's claim. Clearly, neither the Coronavirus nor COVID-19 is a fungus, wet rot or dry rot.

43.     Nor is Coronavirus or COVID-19 a bacteria. The coronavirus disease (COVID-19) is caused by a virus, not by bacteria.

44.     Moreover, if General Star had intended the "Fungus, Wet Rot, Dry Rot and Bacteria" exclusion to include viruses, it had an obligation to expressly identify viruses among the specific agents being excluded.

45.     Fourth, General Star relies on the exclusion for "[d]ischarge, dispersal, seepage, migration, release or escape of 'pollutants'". While the Causes of Loss – Special Form does not define the term "pollutants", the general Building and Personal Property Coverage Form does define that term. But, much like the "Fungus, Wet Rot, Dry Rot and Bacteria" exclusion

discussed above, the definition of "pollutants" in this definition does not include viruses.  Again, this omission shows that General Star did not intend for the exclusion to encompass viruses.

46.     And in any event, even assuming COVID-19 could be considered a "pollutant"— which it is not—this Policy exclusion contains a carve-out stating that "[i]f the discharge, dispersal, seepage, migration, release or escape of 'pollutants' results in a 'specified cause of loss', we will pay for the loss or damage caused by that "specified cause of loss".  Thus, where— as here—COVID-19 resulted in a "specified cause of loss", this exclusion by its express terms does not act to bar coverage.

47.     Finally, the Special Exclusion cited by General Star concerning the Business Income (and Extra Expense) Coverage Form in facially inapplicable because there has been no "[s]uspension, lapse or cancellation of any license, lease or contract."  But even if there were, that exclusion has a carve-out where the "suspension, lapse or cancellation is directly caused by the 'suspension' of operations."

48.     All conditions precedent to this action have been performed, have been waived, or are excused.

49.     SAS is presently in genuine doubt and uncertain as to its rights, status, and privileges, under the Policy issued by General Star, and specifically, its rights, status, and privileges and General Star's obligations to provide coverage for the losses caused by COVID-19 and the COVID-19 governmental authority orders resulting in the suspension of SAS business operations for loss of business income, business interruption, extra expense, civil authority, all risk coverage, and all other coverage extensions up to the limits of the Policy per occurrence.

50.     SAS has a bona fide, actual and present need for a declaration and construction of the Policy, its status, rights, and privileges, and General Star's obligation to provide coverage to

SAS under the Policy, including its primary coverage and all coverage extensions, including the applicable coverage triggers under the Policy.

51.     A bona fide, actual, and present dispute exists as to SAS's rights and General Star's obligations under the Policy and this suit is not just a request for legal advice.

## COUNT I
### (Declaratory Judgment - Mass. Gen. Laws ch. 231A)

52.     SAS repeats and realleges the foregoing paragraphs as if fully set forth herein.

53.     As described above, an active controversy has arisen and now exists between SAS on the one hand, and General Star on the other hand, concerning the proper construction of the Policy, SAS's rights, status and privileges under the Policy, and General Star's obligation to provide coverage to SAS under the Policy.

54.     SAS has no adequate remedy at law.

55.     SAS seeks a judicial declaration of the parties' rights, duties, status and legal relations.

## COUNT II
### (Breach of Contract)

56.     SAS repeats and realleges the foregoing paragraphs as if fully set forth herein.

57.     At all relevant times hereto, SAS and General Star were parties to an agreement, i.e., the Policy.

58.     In the Policy, General Star promised to pay for losses of business income incurred as a result of causes of loss not excluded.

59.     Specifically, General Star promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations up to the policy limits.

12

60.     COVID-19 and the COVID-19 governmental authority orders have caused and continue to cause direct physical loss of or damage to SAS's covered property, and resulting loss of business income and operating income, including payroll.

61.     Because of the direct physical loss of or damage to property, SAS experienced a slowdown or cessation of their business (i.e., a "suspension," as defined by the Policy).

62.     These suspensions and losses triggered the Policy's business income and extra expense coverages.

63.     Additionally, in the Policy, General Star promised to pay for losses of business income and extra expense incurred as a result of certain actions taken by civil authorities that prohibit access to SAS's premises.

64.     COVID-19 and the COVID-19 governmental authority orders caused direct physical loss of or damage to property other than SAS's property that prohibited access to SAS's premises.

65.     SAS has experienced and continues to experience a loss under the Policy's civil authority coverage arising from the direct physical loss of or damage to property caused by COVID-19 and the COVID-19 governmental authority orders that prohibited access to SAS's premises.

66.     These actions, losses, and expenses triggered civil authority coverage under the Policy.

67.     Additionally, the sue and labor provision in the Policy imposes a duty on SAS to prevent further damage and to keep a record of expenses incurred in the event of a covered loss.

68.     SAS is entitled to recover these expenses in the event of a covered loss.

69.     As discussed, SAS has submitted a claim for a covered loss.  As a result of COVID-19 and in complying with the Governmental Orders and by suspending operations, SAS incurred expenses in connection with reasonable steps to protect Covered Property. Consequently, SAS has stated a claim for sue and labor coverage.

70.     SAS has complied with all applicable Policy provisions, including paying premiums and providing timely notice of their claims.

71.     Nonetheless, General Star has unjustifiably failed and refused to affirm coverage and, though such inaction, statements and other conduct, has effectively denied coverage and refused to pay for these losses and expenses in breach the Policy.

72.     SAS has suffered and continues to suffer damages as a result of General Star's breach of the Policy.

73.     SAS is entitled to damages as a result of General Star's breach in an amount to be determined at trial, including pre- and post-judgment interest and any other costs and relief that this Court deems proper.

## RELIEF REQUESTED

WHEREFORE, SAS requests that this Court enter judgment in its favor and against General Star as follows:

A.     As to Count I, a declaration that (1) the Policy covers SAS's claims up to the policy limits per occurrence; and (2) that no exclusion in the Policy applies to bar or limit coverage for SAS's claims;

B.     As to Count II, that General Star breached to Policy by failing to pay SAS's claims and award SAS damages;

C.     Award SAS prejudgment interest according to proof;

D.     Award SAS its costs, expenses, attorneys' fees and expert witness fees; and

E.     Award such other and further relief, including equitable relief, as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

SAS hereby demands a trial by jury on all issues so triable in this action.

<div style="margin-left: 40%;">

Respectfully submitted,

Plaintiff,

SAS INTERNATIONAL, LTD.

By Its attorneys,

/s/ Eric E. Renner
Eric E. Renner  (BBO #666710)
Renner Law, LLC
50 South Main Street, Suite 202
Providence, RI  02903
Phone: 401-404-5251
Fax: 401-404-5285
erenner@rennerlawllc.com

</div>

Date:  September 11, 2020

#2

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>2073CV00608 B | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

BRISTOL SS SUPERIOR COURT
FILED

SEP 1 1 2020

MARC J SANTOS, ESQ.
CLERK/MAGISTRATE

| PLAINTIFF(S): | SAS International, Ltd. | | COUNTY |
|---|---|---|---|
| ADDRESS: | 85 Anawan Street Rear, Fall River, MA 02721 | | Bristol |

| | | DEFENDANT(S): | General Star Indemnity Company |
|---|---|---|---|
| | | | 120 Long Ridge Road, Stamford CT 06902-1843 |

| ATTORNEY: | Eric E. Renner | | |
|---|---|---|---|
| ADDRESS: | Renner Law, LLC, 50 South Main St., Ste. 202, Providence, RI 02903 | ADDRESS: | |

| BBO: | 666710 |
|---|---|

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO.<br>D13 | TYPE OF ACTION (specify)<br>Declaratory Judgment, G.L. c.231A | TRACK<br>A | HAS A JURY CLAIM BEEN MADE?<br>☒ YES   ☐ NO |
|---|---|---|---|

*If "Other" please describe:

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ........................................................................................... $ _____
2. Total doctor expenses ............................................................................................. $ _____
3. Total chiropractic expenses ..................................................................................... $ _____
4. Total physical therapy expenses ............................................................................. $ _____
5. Total other expenses (describe below) .................................................................... $ _____
                                                                            Subtotal (A): $ _____

B. Documented lost wages and compensation to date ..................................................... $ _____
C. Documented property damages to dated ...................................................................... $ _____
D. Reasonably anticipated future medical and hospital expenses ..................................... $ _____
E. Reasonably anticipated lost wages ............................................................................... $ _____
F. Other documented items of damages (describe below) ................................................. $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                                    TOTAL (A-F):$ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
Failure to pay losses covered under insurance policy.                    TOTAL: $  >$50,000

Signature of Attorney/Pro Se Plaintiff: X _____       Date: Sep 11, 2020

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____          Date: Sep 11, 2020

# EXHIBIT B



# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER: | NAMED INSURED |
|---|---|
| IMA346757A | SAS, LTD. |

Endorsement No./ Edition Date/ Form Description

**Forms Applicable - INTERLINE**

```
GSI-04-AP00D (03-10)      COMM POLICY DECL
GSI-04-I618 (08-06)       COMMON POLICY CONDITIONS
GSI-04-I600 (03-10)       SERVICE OF SUIT CLAUSE
GSI-04-I604 (01-01)       MINIMUM EARNED PREM
IL0985 (01-15)            DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT
GSI-04-AP040 (10-18)      40+ ADVANTAGEPAC ENDORSEMENT
GSI-04-CGLDEC(05-04)      GENERAL LIABILITY DECL
GSI-04-CGLDECX(05-04)     COMM GL EXT DECL
CG0001 (12-07)            GL COVERAGE FORM-OCC
GSI-04-C512 (01-01)       CLASSIFICATION LIMITATION
GSI-04-AP600 (02-16)      CGL COMBINED PROVISIONS ENDORSEMENT - GENERAL LIABILITY
GSI-04-C809 (01-01)       EXCL-DESIG OPS OR ACTIVITIES
GSI-04-C820 (05-09)       EXCL-PUNITIVE OR EXEMP DMGS
IL0021 (09-08)            NUCLEAR ENERGY LIAB EXCL
CG2134 (01-87)            EXCL-DESIGNATED WORK
CG2144 (07-98)            LIMITATION OF COVERAGE
CG2173 (01-15)            EXCL OF CERTIFIED ACTS OF TERRORISM
GSI-04-CP03D (05-04)      COMM PROPERTY COV DECL
GSI-04-AP400 (03-14)      PROPERTY COMBINED PROVISIONS ENDORSEMENT - PROPERTY
GSI-04-P487 (01-17)       MULTIPLE DEDUCTIBLE FORM
CP0010 (10-12)            BUILDING AND PERS PROP COVG
CP0030 (10-12)            BUS INCOME (AND EXTRA EXP)
CP0090 (07-88)            COMM PROPERTY CONDITIONS
CP0411 (09-17)            PROTECTIVE SAFEGUARDS
CP0450 (07-88)            VACANCY PERMIT
CP1030 (09-17)            CAUSE OF LOSS-SPECIAL
CP1033 (10-12)            THEFT EXCLUSION
CPR 24 0002 (05-13)       FAILURE TO MAINTAIN HEAT ENDORSEMENT
IL0953 (01-15)            EXCLUSION OF CERTIFIED ACTS OF TERRORISM
CLF 21 0001 (06-11)       EXCL - ASSAULT OR BATTERY AND EXPECTED OR INTENDED ACTS
```

# <u>ADDITIONAL FORMS</u>

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

**POLICY #** IMA346757A

1. **NAMED INSURED** SAS, LTD.                                    **EFFECTIVE DATE** 09/16/2019

2. **DESCRIPTION OF PREMISES**

| LOC. # | BLDG. # | STREET | CITY | STATE ZIP |
|---|---|---|---|---|
| 1 | 1 | 85-115 ANAWAN STREET | FALL RIVER | MA 02721 |

| LOC. # | BLDG. # | CONST | PROTECT CLASS | DIST TO WATER | YEAR BUILT | OCCUPANCY | CLASS CODE |
|---|---|---|---|---|---|---|---|
| 1 | 1 | JM | PC2 | 5 MILES TO 10 MILES | 1930 | LESSORS RISK/VACANT | 01180 00702 01213 |

3. **COVERAGES PROVIDED** INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN.

| LOC. # | BLDG. # | COVERAGE | LIMIT OF INSURANCE | COVERED CAUSES OF LOSS | COINSURANCE* | RATES | PREMIUM |
|---|---|---|---|---|---|---|---|
| 1 | 1 | BUILDING | 4,285,000 | SPECIAL | 80% | .336 | 14,401 |
| 1 | 1 | BI WITH EE | 60,000 | SPECIAL | 100% | .336 | 201 |

\* IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

TERRORISM RISK INSURANCE ACT (TRIA) PREMIUM:
(TRIA COVERAGE NOT APPLICABLE UNLESS PREMIUM SHOWN ABOVE)

TOTAL PREMIUM: 14,602

4. **OPTIONAL COVERAGES** APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW.

| LOC. # | BLDG. # | AGREED VALUE EXPIRATION DATE | COVERAGE | AMOUNT | REPLACEMENT COST(X) BUILDING | PERSONAL PROPERTY | INCLUDING "STOCK" |
|---|---|---|---|---|---|---|---|

INFLATION GUARD (Percentage)    * MONTHLY LIMIT OF   *MAXIMUM PERIOD   *EXTENDED PERIOD
BUILDING    PERSONAL PROPERTY   INDEMNITY (Fraction)   OF INDEMNITY (X)   OF INDEMNITY (Days)

*APPLIES TO BUSINESS INCOME ONLY

5. **MORTGAGE HOLDER**

| LOC. # | BLDG. # | MORTGAGE HOLDER NAME AND MAILING ADDRESS |
|---|---|---|
| 1 | 1 | BELCHIOR LEASING COMPANY INCORPORATED 1753 MAIN STREET, BROCKTON, MA 02301 |

6. **DEDUCTIBLE**
$5,000 DEDUCTIBLE EXCEPT FOR $10,000 WIND OR HAIL DEDUCTIBLE, APPLICABLE TO ALL COVERAGES.

7. **FORMS APPLICABLE**

TO ALL COVERAGES:    See Schedule of Forms & Endorsements GSI-04-FORMSCH (1-01)

TO SPECIFIC PREMISES/ COVERAGES:

LOC. #    BLDG. #    COVERAGES                    FORM NUMBER

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMERCIAL PROPERTY COMBINED PROVISIONS ENDORSEMENT
## 40+ AdvantagePAC

The following amends insurance provided under the policy. Note the specific coverage forms or causes of loss forms affected by the amendatory provisions.

## 1. DEDUCTIBLE PROVISION

**This DEDUCTIBLE PROVISION modifies insurance provided under the following when attached to the policy:**

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM

It is agreed that section **D. Deductible** is deleted in its entirety and replaced by the following:

### D. Deductible

1. In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

   When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

   When the occurrence involves loss to a specific Covered Property caused by or resulting from a Covered Cause of Loss that is subject to a Sublimit(s) as stated in this Coverage Form, Declarations or in any endorsement to this policy, then any amount of such loss in excess of the applicable Sublimit(s) will not be considered to be part of the covered loss under this policy for purposes of application of any Deductible(s) and, as such, will not offset, defray, or erode any Deductible(s) provided in this policy.

   **Example No. 1:**
   (This example assumes there is no coinsurance penalty.)

   | | | |
   |---|---|---|
   | Deductible: | $ | 250 |
   | Limit of Insurance – Bldg. 1: | $ | 60,000 |
   | Limit of Insurance – Bldg. 2: | $ | 80,000 |
   | Loss to Bldg. 1: | $ | 60,100 |
   | Loss to Bldg. 2: | $ | 90,000 |

   The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

   The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

   $60,100
   – $   250
   $59,850 Loss Payable – Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139, 850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

Loss to Bldg. 1: $70,000
(exceeds Limit of Insurance plus Deductible)
Loss to Bldg. 2: $90,000
(exceeds Limit of Insurance plus Deductible)
Loss Payable – Bldg. 1: $60,000
(Limit of Insurance)
Loss Payable – Bldg. 2: $80,000
(Limit of Insurance)
Total amount of loss payable: $140,000

**Example No. 3:**

(This example assumes there is no coinsurance penalty.)

Sublimit of Insurance / Application of Deductible(s)

Two Covered Causes of Loss – Multiple Deductibles – One Occurrence

| Covered Cause of Loss | | Wind |
|---|---|---|
| Wind Deductible – Bldg. 1: | $ | 25,000 |
| Wind Subject to total Policy Limit of Insurance | $ | 4,000,000 |
| Total Amount of Loss to Bldg. 1 - Wind | $ | 35,000 |
| Covered Cause of Loss | | Flood |
| Flood Deductible – Bldg. 1: | $ | 10,000 |
| Flood Sublimit of Insurance | $ | 80,000 |
| Total Amount of Loss to Bldg. 1 – Flood | $ | 100,000 |

The Wind Deductible will be subtracted from the total amount of Wind Loss to Bldg. 1:

$35,000  Total Amount of Wind Loss
- $25,000  Wind Deductible
$10,000  Net Wind Loss Remaining – Bldg. 1

The Net Wind Loss Remaining to Bldg. 1 of $10,000 is paid in full under this policy since it is less than the total Policy Limit of Insurance.

© Copyright, General Star Management Company, Stamford, CT, 2014
Contains ISO Copyrighted Materials Used With Their Permission

The Flood Deductible will be subtracted from the total amount of Flood Loss to Bldg. 1:

$100,000   Total Amount of Flood Loss
– $ 10,000   Flood Deductible
  $ 90,000   Net Flood Loss Remaining – Bldg. 1

Since the Net Flood Loss Remaining to Bldg. 1 of $90,000 exceeds the applicable Flood Sublimit of Insurance, the Flood Sublimit of Insurance of $80,000 is the most we will pay for this covered loss to Bldg. 1. The balance of $10,000 after application of the Flood Sublimit of Insurance is not covered loss payable by this policy. That calculation is as follows:

$90,000   Net Flood Loss Remaining
– $80,000   Flood Sublimit of Insurance
  $10,000   Unpaid Flood Loss – Bldg. 1

The Unpaid Flood Loss of $10,000 cannot be applied to offset, defray or erode any portion of the Wind Deductible for the Wind Covered Cause of Loss to Bldg. 1.

## 2. ELECTRONIC DATA LIMITATION PROVISION

**This ELECTRONIC DATA LIMITATION PROVISION modifies insurance provided under the following when attached to the policy:**

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM

It is agreed that subparagraph **(4)** of paragraph **f. Electronic Data** of subsection **4. Additional Coverages** in section **A. Coverage** is deleted in its entirety and replaced with the following:

**(4)** The most we will pay under this Additional Coverage – Electronic Data is $250 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**This ELECTRONIC DATA LIMITATION PROVISION modifies insurance provided under the following when attached to the policy:**

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

It is agreed that subparagraph **(4)** of paragraph **d. Interruption of Computer Operations** of subsection **5. Additional Coverages** in section **A. Coverage** is deleted in its entirety and replaced with the following:

**(4)** The most we will pay under this Additional Coverage – Interruption of Computer Operations is $250 for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**This ELECTRONIC DATA LIMITATION PROVISION modifies insurance provided under the following when attached to the policy:**

BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

It is agreed that subparagraph **(4)** of paragraph **e. Interruption of Computer Operations** of subsection **4. Additional Coverages** in section **A. Coverage** is deleted in its entirety and replaced with the following:

**(4)** The most we will pay under this Additional Coverage – Interruption of Computer Operations is $250 for all loss sustained in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss sustained as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss in a subsequent policy year(s), all loss is deemed to be sustained in the policy year in which the interruption began.

**3. FUNGUS CLEAN UP AND REMOVAL LIMITATION PROVISION**

**This FUNGUS CLEAN UP AND REMOVAL LIMITATION PROVISION modifies insurance provided under the following when attached to the policy:**

CAUSES OF LOSS --- SPECIAL FORM

**SCHEDULE**
**FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT __$10,000__**

**A.** It is agreed that paragraph **h.**, **"Fungus"**, **Wet Rot**, **Dry Rot and Bacteria** of subsection **1.** in section **B. Exclusions** is deleted in its entirety and is replaced with the following:

**h. "Fungus", "Spore(s)", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", "spore(s)", wet or dry rot or bacteria.

**B.** Section **E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot and Bacteria** is deleted in its entirety and replaced with the following:

**E. Additional Coverage – Limited Coverage For "Fungus", "Spores", Wet Rot, Dry Rot and Bacteria**

**1.** Subject to all other policy provisions, we will pay your expense for testing for, monitoring, abatement, mitigation, removal, remediation or disposal of "fungus" or "spores" or any substance, vapor, gas, or byproducts produced by or arising out of any "fungus" or "spores" provided:

a. Such expense is caused by or results from a Covered Cause of Loss that occurs during the policy period;

b. Subject to all other policy conditions, the necessity of such expense is reported to us in writing within 60 days of the date on which the Covered Cause of Loss occurs; and

c. We authorize you to incur such expense.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2. a. Regardless of the number of claims, insured locations or occurrences, the most we will pay under this policy, in excess of any applicable deductible, for the sum of all covered expense described in paragraph **E.1.a.** above, is the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT shown in the SCHEDULE of this endorsement.

b. Subject to paragraph **2.a.** above, the FUNGUS CLEAN UP AND REMOVAL POLICY LIMIT applies to and includes the costs associated with the replacement of Covered Property discarded or destroyed as part of the removal or remediation of "fungus" or "spore(s)".

C. Subsection **1.** of section **G. Definitions** is deleted in its entirety and replaced by the following:

1. The term "fungus", as used in this endorsement and throughout the entire policy, includes, but is not limited to, any form or type of mildew, mold, wet or dry rot, bacteria, mushroom, rust, smuts, or yeast, including any allergens, irritants, mycotoxins, or scents, byproducts, microbial volatile organic compounds produced by or associated therewith.

D. The following paragraph **3.** is added to section **G. Definitions**:

3. The term "spore(s)", as used in this endorsement and throughout the entire policy, means any reproductive body produced by or arising out of any "fungus".


4. ABSOLUTE ASBESTOS EXCLUSION PROVISION

**This ABSOLUTE ASBESTOS EXCLUSION PROVISION modifies insurance provided under the following when attached to the policy:**

CAUSES OF LOSS --- SPECIAL FORM


The following is added to the Exclusions section and is therefore not a Covered Cause of Loss:

**Absolute Asbestos Exclusion**

We will not pay for loss or damage caused directly or indirectly by existence of or actual, alleged or threatened, discharge, dispersal, seepage, migration, release or escape of any asbestos, or any materials containing them, at any time. This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

## 5. NO DUTY OR RESPONSIBILITY TO SEND NOTICE WHEN WE DO NOT RENEW

This **NO DUTY OR RESPONSIBILITY TO SEND NOTICE WHEN WE DO NOT RENEW PROVSIION** modifies insurance provided under the following when attached to the policy:

COMMERCIAL PROPERTY CONDITIONS

The following is added to the **Commercial Property Conditions (CP 00 90)**

**J.  NO DUTY OR RESPONSIBILITY TO SEND NOTICE WHEN WE DO NOT RENEW**

If we decide not to renew this policy we have no duty or responsibility to mail or deliver written notice of the non-renewal to any insured.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MULTIPLE DEDUCTIBLE FORM –
## MULTIPLE COVERED CAUSES OF LOSS

This endorsement modifies insurance provided under this Policy.

1.  The following is added to the DEDUCTIBLE section:
    A.  In the event that loss or damage by multiple Covered Causes of Loss occurs to Covered Property as a result of one occurrence, the largest of those deductibles applicable to the Covered Causes of Loss, as shown in the Schedule below or in the Declarations, will apply.

2.  The Deductibles applicable to any one occurrence are shown in the Schedule below:

| | | | | Schedule * | | | |
|---|---|---|---|---|---|---|---|
| Prem. No. | Bldg. No. | Deductible | Covered Cause(s) of Loss** | Deductible applies per: | | | |
| 1 | 1 | $5,000 | (01) | ☒ Per Occurrence ☐ Per Location  ☐ Other ____ | ☐ Per Location | ☐ Per Building | ☐ Per Unit |
| 1 | 1 | $10,000 | (05) | ☒ Per Occurrence ☐ Per Location  ☐ Other ____ | ☐ Per Location | ☐ Per Building | ☐ Per Unit |
| | | | | ☐ Per Occurrence ☐ Per Location  ☐ Other ____ | ☐ Per Location | ☐ Per Building | ☐ Per Unit |
| | | | | ☐ Per Occurrence ☐ Per Location  ☐ Other ____ | ☐ Per Location | ☐ Per Building | ☐ Per Unit |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\* For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

  **(1)** All Covered Causes of Loss except those with a separate deductible shown in the Schedule
  **(2)** "Hurricane"
  **(3)** Windstorm or Hail except windstorm or hail caused by a "Hurricane"
  **(4)** Theft **(Only applicable for use with the Special Cause of Loss Form)**
  **(5)** Windstorm or Hail
  **(6)** "Named Storm"
  **(7)** Windstorm or Hail except windstorm or hail caused by "Named Storm"
  **(8)** Vandalism
  **(9)** Water damage **(Only applicable for use with the Broad or Special Cause of Loss Form)**
  **(10)** Sprinkler Leakage
  **(11)** Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by or resulting from the thawing of snow, sleet, or ice on the building or structure. **(Only applicable for use with the Special Cause of Loss Form)**
  **(12)** Other: _____

3. The term "Named Storm" is defined as any atmospheric disturbance declared to be a tropical storm or hurricane by the National Hurricane Center, National Weather Service, Tropical Prediction Center or National Oceanic and Atmospheric Administration, or any successor organization thereof, regardless of name.

4. The term "Hurricane" is defined as any atmospheric disturbance declared to be a hurricane by the National Hurricane Center, National Weather Service, Tropical Prediction Center or National Oceanic and Atmospheric Administration, or any successor organization thereof, regardless of name.
   All other terms, conditions and exclusions remain unchanged.

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

b. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

c. Automobiles held for sale;

d. Bridges, roadways, walks, patios or other paved surfaces;

e. Contraband, or property in the course of illegal transportation or trade;

f. The cost of excavations, grading, backfilling or filling;

g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

h. Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

i. Personal property while airborne or waterborne;

j. Bulkheads, pilings, piers, wharves or docks;

k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

l. Retaining walls that are not part of a building;

m. Underground pipes, flues or drains;

n. Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.**, does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

o. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

p. Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the described premises.

This paragraph does not apply to:

(a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

© Insurance Services Office, Inc., 2011

(b) Vehicles or self-propelled machines, other than autos, you hold for sale;

(c) Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops;

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

### 3. Covered Causes Of Loss

See applicable Causes Of Loss form as shown in the Declarations.

### 4. Additional Coverages

#### a. Debris Removal

(1) Subject to Paragraphs (2), (3) and (4), we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(b) Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

(c) Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

(d) Remove property of others of a type that would not be Covered Property under this Coverage Form;

(e) Remove deposits of mud or earth from the grounds of the described premises;

(f) Extract "pollutants" from land or water; or

(g) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

(4) We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4).** Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

© Insurance Services Office, Inc., 2011

### d. Pollutant Clean-up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

### e. Increased Cost Of Construction

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage.

(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

© Insurance Services Office, Inc., 2011

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

(1) Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

(2) Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

(2) If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

(3) If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

(4) Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

(1) You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

(a) Temporarily at a location you do not own, lease or operate;

(b) In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

(c) At any fair, trade show or exhibition.

(2) This Extension does not apply to property:

(a) In or on a vehicle; or

(b) In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

(3) The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

f. **Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

g. **Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

(a) Will end 90 days after the business personal property has been placed in the storage unit;

(b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

B. **Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

C. **Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;
2. Pollutant Clean-up And Removal;
3. Increased Cost Of Construction; and
4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---:|
| Deductible: | $ | 250 |
| Limit of Insurance – Building 1: | $ | 60,000 |
| Limit of Insurance – Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
–     250
$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---:|
| Loss to Building 1: | $ 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $ 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $ 60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $ 80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

   a. You must see that the following are done in the event of loss or damage to Covered Property:

   (1) Notify the police if a law may have been broken.

© Insurance Services Office, Inc., 2011

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Loss Payment**

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

© Insurance Services Office, Inc., 2011

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety-glazing material if required by law.

e. Tenants' Improvements and Betterments at:

(1) Actual cash value of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step (1): $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $100,000 ˌ $200,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When: The value of the property is:

| | |
|---|---:|
| Building at Location 1: | $ 75,000 |
| Building at Location 2: | $ 100,000 |
| Personal Property at Location 2: | $ 75,000 |
| | $ 250,000 |
| The Coinsurance percentage for it is: | 90% |
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ 180,000 |
| The Deductible is: | $ 1,000 |
| The amount of loss is: | |
| Building at Location 2: | $ 30,000 |
| Personal Property at Location 2: | $ 20,000 |
| | $ 50,000 |

Step **(1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 , $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

© Insurance Services Office, Inc., 2011

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| | |
|---|---|
| If: The applicable Limit of Insurance is: | $ 100,000 |
| The annual percentage increase is: | 8% |
| The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| The amount of increase is: $100,000 x .08 x 146 ، 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

4. **Extension Of Replacement Cost To Personal Property Of Others**

   a. If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

   b. With respect to replacement cost on the personal property of others, the following limitation applies:

   If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

3. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

(1) **Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

(i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

(ii) 60 consecutive days after the date determined in (1)(a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(2) **"Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

(b) Ends on the earlier of:

(i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

(ii) 60 consecutive days after the date determined in (2)(a) above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

(1) Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

© Insurance Services Office, Inc., 2011

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

1. Alterations And New Buildings;

2. Civil Authority;

3. Extra Expense; or

4. Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Appraisal

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

## 2. Duties In The Event Of Loss

a. You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

### 3. Loss Determination

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

### c. Resumption Of Operations

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

### 4. Loss Payment

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

a. We have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

## D. Additional Condition

### COINSURANCE

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

1. The Coinsurance percentage shown for Business Income in the Declarations; times

2. The sum of:

a. The Net Income (Net Profit or Loss before income taxes), and

b. Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

   **(1)** Prepaid freight – outgoing;

   **(2)** Returns and allowances;

   **(3)** Discounts;

   **(4)** Bad debts;

   **(5)** Collection expenses;

   **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

   **(7)** Cost of merchandise sold (including transportation charges);

   **(8)** Cost of other supplies consumed (including transportation charges);

   **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

   **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

   **(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

   **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When:     The Net Income and operating
          expenses for the 12 months
          following the inception, or last
          previous anniversary date, of
          this policy at the described
          premises would have been:        $ 400,000
          The Coinsurance percentage is:        50%
          The Limit of Insurance is:        $ 150,000
          The amount of loss is:            $  80,000

Step **(1):** $400,000 x 50% = $200,000

          (the minimum amount of insurance to
          meet your Coinsurance requirements)

Step **(2):** $150,000 ⹁ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When:     The Net Income and operating
          expenses for the 12 months
          following the inception, or last
          previous anniversary date, of
          this policy at the described
          premises would have been:        $ 400,000
          The Coinsurance percentage is:        50%
          The Limit of Insurance is:        $ 200,000
          The amount of loss is:            $  80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

   If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

   **1. Maximum Period Of Indemnity**

      **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

(1) The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

(2) The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

(1) The Limit of Insurance, multiplied by

(2) The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |

($120,000 x 1/4 = $30,000)

If, in this example, the actual amount of loss is:

| Days 1–30: | $ 40,000 |
|---|---|
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 90,000 |

We will pay:

| Days 1–30: | $ 30,000 |
|---|---|
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

**a.** To activate this Optional Coverage:

(1) A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

(a) During the 12 months prior to the date of the Work Sheet; and

(b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

(2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

(a) The Coinsurance percentage shown in the Declarations; multiplied by

(b) The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

**b.** The Additional Condition, Coinsurance, is suspended until:

(1) 12 months after the effective date of this Optional Coverage; or

(2) The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

(1) Within 12 months of the effective date of this Optional Coverage; or

(2) When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

(1) The Business Income Limit of Insurance; divided by

(2) The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

**Step (1):** $100,000 , $200,000 = .50

**Step (2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

© Insurance Services Office, Inc., 2011

**F. Definitions**

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

   (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.

2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

 Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-9 |
|  |  |  |
|  |  |  |

**Describe Any "P-9":**

AUTOMATIC SPRINKLER SYSTEM & FIRE ALARM

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to the Commercial Property Conditions:

**Protective Safeguards**

As a condition of this insurance, you are required to:

1. Maintain the protective safeguards listed in the Schedule, and over which you have control, in complete working order;

2. Actively engage and maintain in the "on" position at all times any automatic fire alarm or other automatic system listed in the Schedule; and

3. Notify us if you know of any suspension of or impairment in any protective safeguard listed in the Schedule.

   However, if part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form

Causes Of Loss – Broad Form

Causes Of Loss – Special Form

Mortgageholders Errors And Omissions Coverage Form

Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph **A.**

**C.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System,** including related supervisory services.

Automatic Sprinkler System means:

a. Any automatic fire protective or extinguishing system, including connected:

(1) Sprinklers and discharge nozzles;

(2) Ducts, pipes, valves and fittings;

(3) Tanks, their component parts and supports; and

(4) Pumps and private fire protection mains.

b. When supplied from an automatic fire protective system:

(1) Non-automatic fire protective systems; and

(2) Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

a. Connected to a central station; or

b. Reporting to a public or private fire alarm station.

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

a. Hood;

b. Grease removal device;

c. Duct system; and

d. Wet chemical fire extinguishing equipment.

**"P-9",** the protective system described in the Schedule.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VACANCY PERMIT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

## SCHEDULE

| Prem. No. | Bldg. No. | Excepted Causes of Loss | | Permit Period | |
|---|---|---|---|---|---|
| | | Vandalism | Sprinkler Leakage | From | To |
| 1 | 1 | | | 09/16/2019 | 09/16/2020 |

**A.** The VACANCY Loss Condition does not apply to direct physical loss or damage:

    **1.** At the locations; and

    **2.** During the Permit Period;

    shown in the Schedule or in the Declarations.

**B.** This Vacancy Permit does not apply to the Excepted Causes of Loss indicated in the Declarations or by an "X" in the Schedule.

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of or compliance with any ordinance or law:

   **(1)** Regulating the construction, use or repair of any property; or

   **(2)** Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

   **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   **(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

   **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   **(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   **(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   **(a)** Airborne volcanic blast or airborne shock waves;

   **(b)** Ash, dust or particulate matter; or

   **(c)** Lava flow.

   With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

### c. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

### d. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

### e. Utility Services

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

### f. War And Military Action

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### g. Water

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

    **(a)** Foundations, walls, floors or paved surfaces;

    **(b)** Basements, whether paved or not; or

    **(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

 © Insurance Services Office, Inc., 2016

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

g. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

   (1) You do your best to maintain heat in the building or structure; or

   (2) You drain the equipment and shut off the supply if the heat is not maintained.

h. Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

   This exclusion:

   (1) Applies whether or not an act occurs during your normal hours of operation;

   (2) Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j. Rain, snow, ice or sleet to personal property in the open.

k. Collapse, including any of the following conditions of property or any part of the property:

   (1) An abrupt falling down or caving in;

   (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

   (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above.

   But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, k., does not apply:

   (a) To the extent that coverage is provided under the Additional Coverage, Collapse; or

   (b) To collapse caused by one or more of the following:

      (i) The "specified causes of loss";

      (ii) Breakage of building glass;

      (iii) Weight of rain that collects on a roof; or

      (iv) Weight of people or personal property.

l. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

   This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

m. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

   (1) Planning, zoning, development, surveying, siting;

   (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   (3) Materials used in repair, construction, renovation or remodeling; or

   (4) Maintenance;

© Insurance Services Office, Inc., 2016 **CP 10 30 09 17**

of part or all of any property on or off the described premises.

4. **Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

a. **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused by or resulting from:

(a) Damage or destruction of "finished stock"; or

(b) The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(5) Any other consequential loss.

b. **Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse or cancellation of any license; or

(c) Any other consequential loss.

c. **Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph **B.1.a.** Ordinance Or Law;

(b) Paragraph **B.1.c.** Governmental Action;

(c) Paragraph **B.1.d.** Nuclear Hazard;

(d) Paragraph **B.1.e.** Utility Services; and

(e) Paragraph **B.1.f.** War And Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

(a) **Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

(i) Your assumption of liability was executed prior to the accident; and

(ii) The building is Covered Property under this Coverage Form.

(b) **Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

    a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

    b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

    c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

        (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

    d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

    However, this limitation does not apply to:

        (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

        (2) Business Income Coverage or Extra Expense Coverage.

    e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

    f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

    g. Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

        (1) Dampness or dryness of atmosphere or of soil supporting the vegetation;

        (2) Changes in or extremes of temperature;

        (3) Disease;

        (4) Frost or hail; or

        (5) Rain, snow, ice or sleet.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

    a. Animals, and then only if they are killed or their destruction is made necessary.

    b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

        (1) Glass; or

        (2) Containers of property held for sale.

    c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

    However, this limitation does not apply:

        (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

     **(1)** A cause of loss listed in **2.a.** or **2.b.;**

     **(2)** One or more of the "specified causes of loss";

     **(3)** Breakage of building glass;

     **(4)** Weight of people or personal property; or

     **(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

(1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

(2) The property is Covered Property under this Coverage Form.

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

8. The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

E. **Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

6. The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

a. If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

F. **Additional Coverage Extensions**

1. **Property In Transit**

This Extension applies only to your personal property to which this form applies.

a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

b. Loss or damage must be caused by or result from one of the following causes of loss:

(1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

(2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

(3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

c. The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

### 3. Glass

a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

b. We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

### G. Definitions

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      (1) The cost of filling sinkholes; or

      (2) Sinking or collapse of land into man-made underground cavities.

   b. Falling objects does not include loss or damage to:

      (1) Personal property in the open; or

      (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   c. Water damage means:

      (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

      (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# THEFT EXCLUSION

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS - SPECIAL FORM

## SCHEDULE

| Premises Number | Building Number |
|---|---|
| 1 | 1 |
| | |
| | |

| |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

With respect to the location(s) indicated in the Schedule, the following is added to the **Exclusions** section:

We will not pay for loss or damage caused by or resulting from theft.

But we will pay for:

1. Loss or damage that occurs due to looting at the time and place of a riot or civil commotion; or

2. Building damage caused by the breaking in or exiting of burglars.

And if theft results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FAILURE TO MAINTAIN HEAT ENDORSEMENT

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS --- BASIC FORM
CAUSES OF LOSS --- BROAD FORM
CAUSES OF LOSS --- SPECIAL FORM

This endorsement, effective 09/16/2019        forms a part of Policy # IMA346757A

issued to SAS, LTD.        by GENERAL STAR INDEMNITY COMPANY.

**A.** The following amends the CAUSES OF LOSS --- BASIC FORM or the CAUSES OF LOSS --- BROAD FORM, if applicable:

    **1.** Section **A.9** is hereby deleted and replaced with the following:

        **9. a.** Sprinkler leakage, meaning leakage or discharge of any substance from an Automatic Sprinkler System, including collapse of a tank that is part of the system.

            If the building or structure containing the Automatic Sprinkler System is Covered Property, we will also pay the cost to:

           **(1)** Repair or replace damaged parts of the Automatic Sprinkler System if the damage results in sprinkler leakage.

           **(2)** Tear out and replace any part of the building or structure to repair damage to the Automatic Sprinkler System that has resulted in sprinkler leakage

        **b.** However, Sprinkler Leakage does not include loss or damage caused by or resulting from freezing of an Automatic Sprinkler System, unless you do everything in your control to maintain the temperature in the building or structure at a minimum of 55 degrees Fahrenheit.

        **c.** Automatic Sprinkler System means:

           **(1)** Any automatic fire-protective or extinguishing system, including connected:

               **(a)** Sprinklers and discharge nozzles;
               **(b)** Ducts, pipes, valves and fittings;
               **(c)** Tanks, their component parts and supports; and
               **(d)** Pumps and private fire protection mains

           **(2)** When supplied from an automatic fire protective system:

               **(a)** Non-automatic fire-protective systems; and
               **(b)** Hydrants, standpipes and outlets.

**B.** The following amends the CAUSES OF LOSS --- BROAD FORM, if applicable:

Section **A.14.a.(4)** is deleted in its entirety and replaced with the following:

**(4)** Loss or damage caused by or resulting from freezing, unless you do everything within your control to maintain the temperature in the building or structure at a minimum of 55 degrees Fahrenheit.

**C.** The following amends the CAUSES OF LOSS --- SPECIAL FORM, if applicable.

**1.** Section **B.2.g.** is hereby deleted and replaced with the following:

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (including fire protective systems) caused by or resulting from freezing, unless you do everything within your control to maintain the temperature in the building or structure at a minimum of 55 degrees Fahrenheit.

**2.** Section **C.4.** is hereby deleted and replaced with the following:

**C.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or
**b.** Is directly caused by freezing and you did everything within your control to maintain the temperature in the building or structure at a minimum of 55 degrees Fahrenheit.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

## SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

# EXCLUSION - ASSAULT OR BATTERY AND EXPECTED OR INTENDED ACTS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**

A. This policy does not apply to damages for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by:

1. Any act of assault or battery; or

2. Any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, the insured's employees, patrons or any other person, including but not limited to claims of:

   a. The negligent:
      (1) Employment;
      (2) Investigation;
      (3) Supervision; or
      (4) Retention
      of a person who assaulted or battered, or threatened to assault or batter, any other person; or

   b. The negligent reporting of or failure to report:
      (1) Any assault or battery;
      (2) Any suspected or threatened assault or battery;
      (3) Any person who assaulted or battered, or threatened to assault or batter, any other person; or
      (4) Any person who was assaulted or battered; or

   c. The breach of any legal obligation or any duty:
      (1) To provide adequate security;
      (2) Arising out of any assault or battery;
      (3) That resulted in an assault or battery;
      (4) Arising out of any suspected or threatened assault or battery; or
      (5) To any person who was assaulted or battered.

B. Paragraph **a.** of **SECTION I –COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** is deleted and replaced by the following:

This insurance does not apply to:

**a. Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

C. Paragraph **a.** of **SECTION I – LIQUOR LIABILITY COVERAGE, 2. Exclusions** in the **LIQUOR LIABILITY COVERAGE FORM** is deleted and replaced by the following:

This insurance does not apply to:

**a. Expected Or Intended Injury**
"Injury" expected or intended from the standpoint of the insured.

 Copyright, General Star Management Company, Stamford, CT, 2011
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# EXHIBIT C

Benjamin C. Eggert
202.719.7336
beggert@wiley.law

Joseph W. Gross
202.719.3320
jgross@wiley.law



Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Tel:  202.719.7000

**wiley.law**

September 3, 2020

**VIA E-MAIL**

Eric E. Renner
50 South Main Street, Suite 202
Providence, RI 02903
erenner@rennerlawllc.com

Re:   Named Insured:      SAS LTD
      Policy No.:          IMA346757A
      Policy Period:       09/16/2019-2020
      Claim No.:           G10054778

Dear Mr. Renner,

On behalf of General Star Indemnity Company ("General Star"), we write in response to SAS LTD's ("SAS") August 25, 2020 letter about what is described as "losses caused by the Coronavirus ("COVID-19") pandemic and/or the emergency COVID-19 governmental authority orders to issued stop the spread of the outbreak."  Based on the information currently available, General Star has tentatively concluded that SAS's claimed loss is not covered under the General Star Policy, as discussed below.  Before making a final decision, however, General Star will allow SAS to provide more information and an explanation if it disagrees with General Star's tentative conclusion.  Please provide promptly any such written explanation and any supporting materials for General Star's consideration.

**Claim Background**

On July 20, 2020, General Star received a Property Loss Notice from SAS which described the claimed loss as a "loss of business due to government mandated shutdown."  General Star promptly responded on July 22, 2020.  General Star noted that it required additional information to evaluate coverage but still explained the key provisions of the Policy's Business Income and Civil Authority coverage.  *See* July 22, 2020 Letter from General Star at 1-5.  Specifically, General Star noted that SAS did not identify any "direct physical loss" to SAS's premises, nor did the letter identify "damage to property other than property at" SAS's premises or any loss caused by action of civil authority that prohibited access to SAS's premises.  *Id.* at 1-3.  General Star also quoted other provisions that might apply, including the ordinance exclusion, the governmental action exclusion, the fungus and bacteria exclusion, the pollution exclusion and other special exclusions applicable to the Business Income coverage form.  *Id.* at 3-5.

Eric E. Renner
September 3, 2020
Page 2

On August 25, 2020, SAS sent a letter to General Star stating that, according to SAS, "the parties disagree on the manner in which the Policy coverages and terms apply in the context of the material COVID-19 events."   August 25, 2020 Letter at 1.   The letter stated that SAS seeks coverage under the General Star Policy for what is described as "losses caused by the Coronavirus ("COVID-19") pandemic and/or the emergency COVID-19 governmental authority orders to issued stop the spread of the outbreak," which was described as follows:

> Over the last several months, it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus.   COVID-19 is a physical substance, that it lives on and is active on inert physical surfaces and is emitted into the air.   The presence of COVID-19 renders physical property in their vicinity unsafe and unusable, and SAS and its tenants were forced to suspend or reduce business at the covered premises.

*Id.* at 3.   The August 25, 2020 letter also stated: "Additionally, in response to the COVID-19 pandemic, civil authorities in Massachusetts issued orders requiring the suspension of business at various establishments, including SAS's premises (the "Governmental Orders")."   *Id.*   The letter stated that "[t]he Governmental Orders have required and continue to require SAS to cease and/or significantly reduce operations at, and have prohibited and continue to prohibit access to, its premises."   *Id.* at 3-4.

**The General Star Policy**

General Star issued Commercial Lines Policy No. IMA346757A to SAS for the policy period 09/16/2019 to 9/16/2020 (the "General Star Policy").   The General Star Policy has a Business Income coverage limit of $60,000.   *See* General Star Policy, Commercial Property Coverage Part Declarations.

**Supplemental Coverage Discussion**

As noted by General Star in its July 22, 2020 reservation of rights letter, which is incorporated by reference, there are several provisions of the General Star Policy that appear relevant at this time. However, please understand that other terms, conditions, or exclusions of the General Star Policy may be implicated in the future because further investigation and development may affect coverage for SAS's claimed loss.   General Star thus reserves all of its rights under the General Star Policy and applicable law, including the right to rely on other terms, conditions, and exclusions.

**There is no Building and Personal Property Coverage**

Under the Building and Personal Property Coverage Form, General Star agrees to pay:

> for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**wiley.law**

Eric E. Renner
September 3, 2020
Page 3

*See* General Star Policy, Building and Personal Property Coverage Form, Section A.  The term "Covered Cause of Loss" means "direct physical loss unless the loss is excluded or limited in this policy."  *See id.*, Causes of Loss – Special Form, Section A.

Under these provisions, the Building and Personal Property coverage is triggered in the event of "direct physical loss of or damage to" property.  Without citation to any authority, SAS contends that "[t]he terms 'physical loss' and 'physical damage' are the key phrases in the Policy and they are worded in the disjunctive" and this "necessarily means that either a loss or damage is required, and again 'loss' is distinct from 'damage.'"  August 25, 2020 Letter at 5.  General Star respectfully disagrees.  Massachusetts courts have interpreted the term "direct physical loss or damage" narrowly. *See Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co.*, 321 F. Supp. 2d 260, 264 (D. Mass. 2004) (collecting cases).  Physical damage is required.  *See, e.g., Harvard St. Neighborhood Health Ctr., Inc. v. Hartford Fire Ins. Co.*, No. CV 14-13649-JCB, 2015 WL 13234578, at *8 (D. Mass. Sept. 22, 2015) ("Intangible losses do not fit within [the relevant definition of loss]"); *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*, 26 Mass. App. Ct. 374, 377, 527 N.E.2d 1179, 1180 (1988) ("Nor do we think the salient phrase ("physical loss or damage") fairly can be construed to mean physical loss in the absence of *physical* damage.").

While Massachusetts law is clear on these points, most court decisions across the country have likewise held there is no coverage under similar circumstances.  *See, e.g., 10E, LLC v. Travelers Indem. Co.*, No. 2:20-CV-04418-SVW-AS, 2020 WL 5095587 (C.D. Cal. Aug. 28, 2020); *Malaube, LLC v. Greenwich Ins. Co.*, No. 2022615, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020); *Rose's 1, LLC v. Erie Ins. Exch.*, 2020 D.C. Super. LEXIS 10 (D.C. Super. Ct. Aug. 6, 2020); *Gavrilides Mgmt. Co. LLC v. Mich. Ins. Co.*, 2020 Mich. Cir. LEXIS 395 (Jul. 21, 2020 Mich. Cir. Ct.); *see also The Inns by the Sea v. California Mut. Ins. Co.*, No. 20cv001274 (Cal. Sup. Ct. Aug. 6, 2020); *Soc. Life Magazine, Inc. v. Sentinel Ins. Co.*, No. 1:20-cv-03311 (S.D.N.Y. May 20, 2020).

Here, the loss described in SAS's August 25, 2020 letter is that "SAS and its tenants were forced to suspend or reduce business at the covered premises" because "it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus."  August 25, 2020 Letter at 3.  SAS has identified no evidence that the premises was "infected," and the General Star Policy does not provide coverage where the "direct physical loss or damage" is only hypothetical, regardless of probability.  In any event, even the presence of the virus on the premises would not constitute "direct physical loss or damage" under the General Star Policy and applicable law.  Moreover, even if SAS has lost actual access to its premises, that is not "direct physical loss of or damage to" its property, either.  Instead, SAS appears to have had its operations impacted by orders directed to limiting the community spread of coronavirus.  *See, e.g.*, MA COVID-19 Order No. 13 ("the Department of Public Health is urging all residents of the Commonwealth to limit activities outside of the home and to practice social distancing at all times, both inside and outside of the home to limit the spread of this highly contagious and potentially deadly virus").  Accordingly, because it appears there is no "direct physical loss or damage" to property, General Star denies coverage under the Building and Personal Property coverage.

**wiley.law**

Eric E. Renner
September 3, 2020
Page 4

**There is no Business Income and Extra Expense Coverage**

Under the Business Income (and Extra Expense) Coverage Form (the "BI & EE Coverage Form"), General Star agrees to pay:

> for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

*See* General Star Policy, BI & EE Coverage Form, Section A.1. The term "Covered Cause of Loss" means "direct physical loss unless the loss is excluded or limited in this policy." *See id.*, Causes of Loss – Special Form, Section A.

The Policy further states with regard to Extra Expense coverage:

> **2.** **Extra Expense**
>
> **a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.
>
> **b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.
>
> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> **(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
>
> **(2)** Minimize the "suspension" of business if you cannot continue "operations".
>
> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

Under these provisions, the Business Income and Extra Expense coverage is triggered in the event of "direct physical loss of or damage to" property caused by or result from a Covered Cause

**wiley.law**

Eric E. Renner
September 3, 2020
Page 5

of Loss.  But as explained above, SAS has identified no "direct physical loss of or damage to" property under the Business Income coverage.  As a result, because it appears there is no "direct physical loss or damage" to property, General Star denies coverage under the Business Income and Extra Expense coverage.[1]

**There is no Civil Authority Coverage**

The General Star Policy also contains Civil Authority coverage.  As to this coverage, the General Star Policy states that:

> In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.
>
> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1)   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2)   The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
>
> Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.
>
> Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:
>
> (1)   Four consecutive weeks after the date of that action; or
>
> (2)   When your Civil Authority Coverage for Business Income ends;
>
> whichever is later.

*See* General Star Policy, BI & EE Coverage Form, Section A.5.a.

---

[1] SAS's August 25, 2020 letter mischaracterizes one of General Star's information requests regarding the status of SAS's operations.  SAS noted that General Star asked whether SAS had ceased all business operations and stated that "complete cessation of all operations is not required to trigger coverage."  August 25, 2020 Letter at 4, n.1.  Although General Star inquired about the cessation of SAS's operations, General Star did not suggest that this was required to trigger Business Income and Extra Expense coverage under the General Star Policy.

**wiley.law**

Eric E. Renner
September 3, 2020
Page 6

Under these provisions, the Civil Authority coverage is implicated by "damage to property other than property at the described premises."  SAS has not identified any purported damage to property that is not at SAS's premises, which is necessary to trigger Civil Authority coverage. *See, e.g.*, *Ken Tu v. Dongbu Ins. Co., Ltd.*, No. 17-CV-03495-JSC, 2018 WL 4219238, at *10 (N.D. Cal. Sept. 5, 2018) ("The Civil Authority provision clearly applies only when a civil authority "prohibits access to the described premises" due to "damage to property other than property at the described premises."); *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, No. CIV.A. 09-6057, 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010) ("The Policy does not insure against impairment of operations that occurs simply because a civil authority prohibits access *unless* the civil authority order meets the requirements of the policy—one of those requirements is a nexus between the order and certain physical damage.").  Also, although SAS's August 25, 2020 letter generally maintains that all non-essential businesses were required to close, any impact on SAS stems from the mass closure of nonessential businesses and not from any actual physical loss to any property.  *See, e.g.*, *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, No. CIV.A. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) ("Because the mandatory evacuation order for Wharton County was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred in Florida and the Gulf of Mexico, South Texas's business interruption losses are not covered by its policy"); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (finding no civil authority coverage for curfews associated with Rodney King riots; "the curfews were imposed to *prevent* 'potential' looting, rioting, and resulting property damage.").

Nor does it appear that any order has prohibited access to SAS's premises, as required by the insuring agreement.  As stated in SAS's letter, "none of the aforementioned Governmental Orders prohibit access to SAS's premises."  August 25, 2020 Letter at 7.  Many courts have held that civil authority coverage is not triggered where access to the premises is limited but not completely prohibited.  *See, e.g.*, *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (finding that although, after 9/11, the FAA temporarily suspended air travel, it did not forbid access to the insured's hotels such that civil authority coverage was implicated); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *5 (M.D. Pa. July 6, 2010) (finding no civil authority coverage for ski resort where civil authority closed bridge on primary route but at least some customers could access the resort through alternate routes).  Accordingly, for the reasons explained above, General Star denies coverage under the Civil Authority coverage.

**There is no "sue and labor" coverage:**

The General Star Policy provides that, in the event of covered Loss:

> **2. Duties In The Event Of Loss**
> a. You must see that the following are done in the event of loss:
> …
>> (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

wiley.law

Eric E. Renner
September 3, 2020
Page 7

> …
> (8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

*See* General Star Policy, BI & EE Coverage Form, Section C.2.a.  Similar clauses are sometimes referred to as "sue and labor" provisions, and General Star assumes SAS's reference to "sue and labor coverage" in its August 25, 2020 letter refers to this provision.  *See* August 25, 2020 Letter at 7.  However, the General Star Policy specifies that "we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss."  *See* General Star Policy, BI & EE Coverage Form, Section C.2.a.  Moreover, courts interpreting similar provisions have held that "[t]he sue and labor clause only provides coverage to the insured for the costs the insured expends in preventing or ameliorating losses which the insurer would be required to pay pursuant to the terms of the [relevant] policy."  *Am. Home Assur. Co. v. Fore River Dock & Dredge, Inc.*, 321 F. Supp. 2d 209, 220 (D. Mass. 2004).  As discussed above, General Star has tentatively determined that no coverage is available under the General Star Policy for SAS's claimed loss.  Accordingly, since there is no covered loss, there cannot be "sue and labor coverage" under the General Star Policy.

**The absence of a virus exclusion does not mean that loss purportedly arising out of the coronavirus pandemic is covered**

SAS incorrectly argues that there is somehow coverage under the General Star Policy because the policy lacks a Virus Exclusion under an ISO coverage form (or otherwise).  August 25, 2020 Letter at 7-8.  SAS always has the burden to establish that there is coverage under one of the insuring agreements and, as explained above, there is no coverage available under the Building and Personal Property, Business Income and Extra Expense and Civil Authority coverages.

**Other relevant terms and conditions could bar or limit coverage**

General Star also notes that other terms and provisions of the General Star Policy could otherwise potentially bar or limit coverage for SAS's claimed loss.  In an abundance of caution, General Star discusses those provisions below.  In doing so, General Star in no way suggests that the foregoing coverage issues are not dispositive.  General Star understands that SAS, like General Star, reserves its rights with respect to these provisions.

In that regard, General Star notes that there is no coverage for loss or damage caused directly or indirectly by the enforcement of or compliance with any ordinance or law:

(1)  Regulating the construction, use or repair of any property; or

(2)  Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion . . . applies whether the loss results from:

(a)  An ordinance or law that is enforced even if the property has not been damaged; or

(b)  The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**wiley.law**

Eric E. Renner
September 3, 2020
Page 8

General Star Policy, Causes of Loss – Special Form, Section B.1.a.[2]  SAS's claimed loss is purportedly because of civil authority orders.  Thus, General Star reserves its right to deny coverage for SAS's claimed loss to the extent that it is caused directly or indirectly by the enforcement of or compliance with any ordinance or law regulating the use of any property.

In addition, there is no coverage under the General Star Policy for loss or damage caused directly or indirectly by the "[s]eizure or destruction of property by order of governmental authority." General Star Policy, Causes of Loss – Special Form, Section B.1.c.  General Star reserves its rights under this exclusion.

The General Star Policy also excludes from coverage loss or damage caused directly or indirectly by the "[p]resence, growth, proliferation, spread or any activity of 'fungus,' 'spore(s),' wet or dry rot or bacteria."  General Star Policy, Causes of Loss – Special Form, Section B.1.h, as amended by the Commercial Property Combined Provisions Endorsement.  In light of SAS's assertions about coronavirus, General Star reserves its rights under this exclusion.

Moreover, coverage is unavailable for loss or damage caused by or resulting from "[a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body."  General Star Policy, Causes of Loss – Special Form, Section B.3.b. However, the General Star Policy provides that "if an excluded cause of loss that is listed in 3.a through 3.c results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss."  General Star Policy, Causes of Loss – Special Form, Section B.3. General Star reserves its right to deny coverage under this exclusion.

The General Star Policy further excludes coverage under the BI & EE Coverage Form for "[a]ny loss caused by or resulting from" the "[s]uspension, lapse or cancellation of any license, lease or contract," "[a]ny Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the 'period of restoration,'" or "[a]ny other consequential loss."  General Star Policy, Causes of Loss – Special Form, Section B.4.a.3-5.  General Star reserves its rights under these provisions.

*** 

---

[2] SAS's August 25, 2020 Letter states that this provision has been deleted.  August 25, 2020 Letter at 8.  However, the Ordinance or Law exclusion has only been excluded from the Leasehold Interest Coverage Form and the Legal Liability Coverage Form.  *See* General Star Policy, Causes of Loss – Special Form, Sections B.4.b.1, B.4.c.1.  Neither of those coverages is relevant to SAS's claimed loss.

wiley.law

Eric E. Renner
September 3, 2020
Page 9

**Conclusion**

As explained above, General Star has tentatively concluded that there is no coverage for SAS's claimed loss based on the information available.  If SAS disagrees with this conclusion, General Star invites it to provide any additional information or explanation that it would like General Star to consider.  In the meantime, General Star continues to reserve all of its rights under the Policy and applicable law.


Sincerely,

Benjamin C. Eggert


Joseph W. Gross

cc:      Davidt@eakelley.com
         eileen@estenandrichard.com

wiley.law

4828-4883-2457.3