UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-11864-RGS

SAS INTERNATIONAL, LTD.

v.

GENERAL STAR INDEMNITY COMPANY

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

February 19, 2021

STEARNS, D.J.

Plaintiff SAS International, Ltd. (SAS) brings this action against its commercial insurer, defendant General Star Indemnity Company (General Star), seeking a declaratory judgment concerning the scope of its commercial property insurance coverage and alleging breach of contract. General Star moves to dismiss the case for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). For the following reasons, the court will ALLOW General Star's motion.

**BACKGROUND**

SAS operates a real estate business in which it "own[s] and lease[s] commercial property to others in Fall River, Massachusetts." First Am. Compl. (FAC) (Dkt # 11) ¶ 12. Starting in March of 2020, "civil authorities in Massachusetts issued orders requiring the suspension of business at

various establishments, including SAS's premises," in response to the COVID-19 pandemic.  *Id.* ¶ 48.  The shutdown and ongoing pandemic have caused SAS to suffer losses to its "business volume and practices," which have "not returned to [their] prior, pre-loss capacity."  *Id.* ¶¶ 51-52.

On July 20, 2020, and August 25, 2020, SAS submitted an insurance claim requesting that General Star "provide coverage [for these losses] and pay all benefits owed under" its Commercial Lines Policy No. IMA346757A, *see* Ex. 1 to Thompson Decl. (Dkt # 15-1) (Policy).[1]  FAC ¶ 56.  The Policy defines the scope of "Building and Personal Property Coverage" to include only "*direct physical loss of or damage to* Covered Property . . . caused by or resulting from any Covered Cause of Loss."  Policy, Bldg. and Pers. Prop. Form § A (emphasis added).  A Covered Cause of Loss is any "direct physical loss unless the loss is excluded or limited in this policy."  *Id.*, Causes of Loss – Special Form § A.[2]  Determining that SAS's claims were not covered under

---

[1] The Policy was not attached as an exhibit to the FAC.  However, "in reviewing a Rule 12(b)(6) motion, [a court] may consider documents the authenticity of which are not disputed, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint."  *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).  As SAS cites to this document in its allegations and raises no objection, the court will consider it here.  *See, e.g.*, FAC ¶¶ 13-26.

[2] In the FAC, SAS refers to other types of coverage provided by the Policy, each limited to a "Covered Cause of Loss."

the Policy, General Star refused to reimburse the claimed losses. FAC ¶¶ 58-59.

This lawsuit ensued. By way of the FAC, dated November 12, 2020, SAS seeks a declaratory judgment that the Policy covers its pandemic-related losses and that no exclusion limits coverage (Count I). It also brings a common-law claim for breach of contract (Count II). General Star moved to dismiss on December 2, 2020.

## DISCUSSION

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

---

Under "Business Income and Extra Expense Coverage," General Star agreed to pay for "the actual loss of Business Income [SAS] sustain[s] due to the necessary 'suspension' of [its] 'operations,'" which "must be caused by *direct physical loss of or damage to* property at premises . . . . The loss or damage must be caused by or result from a *Covered Cause of Loss*." Policy, Bus. Income & Extra Expense Coverage Form § A(1) (emphasis added).

"Civil Authority Coverage" provides reimbursement "[w]hen a *Covered Cause of Loss* causes damage to property other than property at the described premises," including "the actual loss of Business Income [SAS] sustain[s] and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises . . . ." *Id.* § A(5)(a) (emphasis added).

Finally, under a "sue and labor provision," General Star stipulated that it would "not pay for any subsequent loss or damage resulting from a cause of loss that is not a *Covered Cause of Loss*." *Id.* § C(2)(a) (emphasis added).

3

relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555 (internal citations omitted). A claim is facially plausible if the factual allegations in the complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The interpretation of an insurance policy is a question of law for the court. *See Ruggerio Ambulance Serv. v. Nat'l Grange Mut. Ins. Co.*, 430 Mass. 794, 797 (2000). Under Massachusetts law, the court "construe[s] an insurance policy under the general rules of contract interpretation, beginning with the actual language of the polic[y], given its plain and ordinary meaning." *Easthampton Congregational Church v. Church Mut. Ins. Co.*, 916 F.3d 86, 91 (1st Cir. 2019), quoting *AIG Prop. Cas. Co. v. Cosby*, 892 F.3d 25, 27 (1st Cir. 2018). Although "ambiguous words or provisions are to be resolved against the insurer," *City Fuel Corp. v. Nat'l Fire Ins. Co. of Hartford*, 446 Mass. 638, 640 (2006), "provisions [that] are plainly and definitely expressed in appropriate language must be enforced in accordance with [the policy's] terms," *High Voltage Eng'g Corp. v. Fed. Ins. Co.*, 981 F.2d 596, 600 (1st Cir. 1992), quoting *Stankus v. N.Y. Life Ins. Co.*, 312 Mass. 366, 369 (1942).

This dispute turns on the meaning of the phrase "direct physical loss of or damage to" property, which cabins the Policy's scope of coverage. SAS alleges in the FAC that COVID-19 "damaged SAS's insured property by attaching to surfaces on and within SAS's insured property," which "render[ed] it[s premises] dangerous, unfit, and unsafe for its intended and insured use." FAC ¶¶ 43-44. In moving to dismiss, General Star argues that the plain meaning of the Policy's language does not encompass an intangible loss caused by the fleeting (and speculative) presence of a virus on a premises. Mem. of Law in Supp. of Mot. to Dismiss (Mot.) (Dkt # 14) at 1, 11-12. SAS agrees that "that economic losses . . . are not covered," but responds that the Policy may be interpreted to cover "a cause of loss [that] renders the property unusable for its intended purpose, even if the loss is intangible." Opp'n to Mot. (Dkt # 20) at 8.

The court starts with the plain meaning of the Policy's relevant language. Here, the term "physical," which "involv[es] the *material* universe and its phenomena" and "pertain[s] to real, *tangible* objects," is an adjective modifying "loss," defined as, *inter alia*, "the disappearance or diminution of value." Black's Law Dictionary (11th ed. 2019) (emphases added). The term "damage" also entails "[l]oss or injury to person or property; esp., physical harm that is done to something or to part of someone's body." *Id.* Taken

5

together, these terms require some enduring impact to the actual integrity of the property at issue. In other words, the phrase "direct physical loss of or damage to" does not encompass transient phenomena of no lasting effect, much less real or imagined reputational harm.

This interpretation aligns with Massachusetts law. *See Harvard St. Neighborhood Health Ctr., Inc. v. Hartford Fire Ins. Co.*, 2015 WL 13234578, at *8 (D. Mass. Sept. 22, 2015) ("Intangible losses do not fit within th[e] definition [of 'direct physical loss'] . . . ."); *Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co.*, 321 F. Supp. 2d 260, 264 (D. Mass. 2004) (collecting cases holding that diminution in value is not a "direct physical loss"); *Pirie v. Fed. Ins. Co.*, 45 Mass. App. Ct. 907, 908 (1998) (holding that an internal defect in a structure, such as the presence of lead paint, is not a "direct physical loss"). In *Verveine Corp. v. Strathmore Ins. Co*, No. 2020-01378 (Mass. Super. Ct. Dec. 21, 2020), the Massachusetts Superior Court in Bristol County considered whether the same insurance policy language at issue here covered losses arising from COVID-19 and concluded that it could not "be construed to cover physical loss in the absence of some physical damage to the insured's property." *Id.* at 5, citing *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*, 26 Mass. App. Ct. 374, 377 (1988). A leading insurance treatise offers the following guidance:

> The requirement that the loss be "physical," given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

10A Couch on Ins. § 148:46 (3d ed. 2020) (footnotes omitted).

In the face of established precedent, SAS strives for an interpretation of its Policy that "gives rise to an ambiguity that the Court should read in [its] favor." Opp'n at 9. Attempting to differentiate the phrase "physical loss *of* or damage to" from "physical loss or damage to," SAS reasons that the former – as in the Policy's language – broadens the meaning of the phrase "physical loss," otherwise it would be void as surplusage of the term "damage to." *Id.* at 6. The court disagrees. Because the phrase at issue consists of a sequence of related terms, a proper grammatical reading gives a parallel construction to the adjective "physical," meaning that it modifies both "loss of" and "damage to." *Accord Roche Bros. Supermarkets, LLC v. Cont'l Cas. Co.*, 2018 WL 3404061, at *4 (Mass. Super. Mar. 16, 2018) ("[T]he coverage clause . . . insur[ing] 'against risks of direct physical loss of or damage to property,' is unambiguous. The risks being covered are physical loss of property and physical damage to property.").

In any event, construing the language "physical loss of" to cover the deprivation of a property's *use* absent any tangible damage to the property

distorts the plain meaning of the Policy.[3] Simply put, the Policy does not cover a mere threat to the insured property without any actual physical damage having occurred. SAS's argument that "the Policy itself does not use the terms 'material,' [or] 'tangible'" is equally unavailing. Opp'n at 7. Contrary to SAS's objection that General Star "modif[ies] the Policy now to include such language," *id.*, General Star draws its interpretation from the definition of "physical." The analysis that SAS presents, by contrast, would require the court to read that term *out* of the Policy.

To establish that COVID-19 caused "direct physical loss" to its insured premises, SAS analogizes the virus to a "permeating or pervasive" odor, which the First Circuit and Massachusetts state courts have found "reasonably susceptible to an interpretation [of causing] physical injury to property." *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406

---

[3] The case law that SAS cites for this proposition does not support SAS's "loss of use" interpretation. In *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767 (C.D. Cal. July 11, 2018), the court applied the language "loss of" not to property that lost its intended use, but rather to property that was "misplaced and unrecoverable" – there, a lost and mislabeled shipping container. *Id.* at *3. Although the Eighth Circuit in *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834 (8th Cir. 2006), suggested that the phrase "physical loss of property" may cover losses from a product unable to be transported but otherwise undamaged, the product in that case was completely stranded on the wrong side of a border and left permanently inaccessible to its owner, which is not the case with SAS's real property. *Id.* at 838.

(1st Cir. 2009); *see also Matzner v. Seaco Ins. Co.*, 1998 WL 566658, at *3 (Mass. Super. Aug. 12, 1998).[4] Unlike an unpleasant odor, however, COVID-19 is imperceptible; it does not endure beyond a brief passage of time or a proper cleaning, let alone render the property permanently uninhabitable.[5] *See Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020). SAS's comparison is also unconvincing because the Policy excludes from coverage "gaseous . . . contaminant[s], including smoke, vapor, soot, fumes, . . . [and] chemicals." Policy, Bldg. and Pers. Prop. Coverage Form § H(2); *see also id.*, Causes of Loss – Special Form § 2(l).[6] At

---

[4] The Massachusetts Supreme Judicial Court has not determined whether the phrase "physical loss" covers a property's loss of use stemming from an intangible substance. *See Essex*, 562 F.3d at 404; *Matzner*, 1998 WL 566658, at *3 ("'[D]irect physical loss or damage' is . . . susceptible of at least two different interpretations. One includes only tangible damage . . . . The second includes a wider array of losses."). The court need not grapple with this unsettled issue because no reasonable construction of the phrase "direct physical loss," however broad, would cover the presence of a virus.

[5] Putting aside the Policy's exclusion for gaseous contaminants, as the court pointed out at the hearing, a more sympathetic case for an insured might be made in the instance of smoke taint of the kind that ruined much the Napa, California grape harvest in 2020 in the wake of devastating wildfires. Burning wood releases volatile phenols that bind with organic sugars in grapes. The result is to infuse wine distilled from the grapes with a medicinal, ashen taste that consumers find unpalatable. In the smoke taint instance, because the damage is a physical and irreparable alteration of the chemical structure of the grape, a claim for damage "to or of" property might stand on firmer ground than in the case of COVID-19.

[6] The Policy does contemplate coverage for pollutants in certain instances. General Star agreed to "pay [the] expense to extract 'pollutants'

most, SAS's theory of COVID-19's presence on its property is redolent of reputational harm, not physical loss.

Moreover, reading the phrase "direct physical loss" in the context of the Policy underscores the lack of coverage for losses arising from a virus. *See Allamerica Fin. Cory, v. Certain Underwriters at Lloyd's London*, 449 Mass. 621,628 (2007) ("Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.") (internal quotations and citations omitted). The Policy excludes from coverage not only pollutant vapors, as described above, but also remediation for the "the presence . . . of . . . bacteria." Policy, Bldg. and Pers. Prop. Coverage Form § A(5). A construction of the Policy that covers losses related to COVID-19 yet excludes losses arising from substances of a similar nature – e.g., biological, microscopic particles – is unreasonable. By extension, the "absence of an express [virus] exclusion does not operate to create coverage" for pandemic-related losses. *Given v. Com. Ins. Co.*, 440 Mass. 207, 212 (2003).

---

. . . at the described premises if the discharge, dispersal, seepage, migration, release or escape of the 'pollutants' is caused by or results from a Covered Cause of Loss . . . ." Policy, Bldg. and Pers. Prop. Coverage Form § A(4)(d). This language, however, indicates that pollutants may be a consequence of, but are otherwise distinct from, a Covered Cause of Loss, e.g., a direct physical loss.

Having found that the phrase "direct physical loss" does not encompass a viral infestation, SAS cannot establish coverage under any other part of the Policy. While SAS argues that Civil Authority Coverage provides an avenue to relief "[s]eparate and independent from the existence of direct physical loss of or damage to SAS's covered property," Opp'n at 17, the Policy specifically limits Civil Authority Coverage to a "Covered Cause of Loss" – namely, a "direct physical loss." *See* Mot. at 17.

SAS's attempt to distinguish the FAC from the trend of dismissals in similar cases across the country is also futile. Numerous cases have endeavored to stretch the terms of insurance policies to their limits in the wake of the widespread losses caused by COVID-19. *See* Mot. at 2 n.1, 2 n.2 (collecting cases); Ex. B to Reply (Dkt # 23-2). While similar actions have been dismissed for, among other reasons, failing to allege the presence of COVID-19 on the insured premises, Opp'n at 11 n.7 (collecting cases), SAS alleges (although without any corroborating expert evidence) that COVID-19 did contaminate its property.[7] *Id*. at 13-16. SAS's effort to plead around this

---

[7] SAS alleges that "it is and remains statistically certain" because of the "documented prevalence and known infection rate of COVID-19" that "individuals infected with . . . COVID-19 . . . have been present on SAS's insured property, thereby deposit[ing] COVID-19 at SAS's insured location." FAC ¶¶ 39-40; *see also* Opp'n at 5 ("[T]he COVID-19 pandemic necessarily means Coronavirus is at [SAS's] insured location."). General Star asserts that these allegations are "bare bones" and "wishy-washy" – in other words,

deficiency does not automatically establish a plausible entitlement to relief. In fact, courts have almost uniformly declined to follow outlier cases that have allowed complaints containing similar allegations to survive dismissal.[8] The court will follow suit here.

---

conclusory. Mot. at 14. To decide this motion, the court need not decide whether these allegations proffer more than mere "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678. *But see Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020) (finding similar allegations concerning COVID-19 speculative and granting the motion to dismiss).

[8] For example, the court in *Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), held that "physical loss has been adequately alleged insofar as the presence of COVID-19 . . . restricted access to Plaintiffs' premises." *Id.*, at *7 n.6. Other courts have either tiptoed around this holding, criticized it, or treated it as the minority position. *See, e.g., W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 2020 WL 6440037, at *4 (C.D. Cal. Oct. 27, 2020); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 2020 WL 5742712, at *7 (C.D. Cal. Sept. 10, 2020); *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the S.E.*, 2021 WL 289547, at *6 n.5 (E.D. Pa. Jan. 28, 2021); *Zwillo V, Corp. v. Lexington Ins. Co.*, 2020 WL 7137110, at *8 (W.D. Mo. Dec. 2, 2020); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 2020 WL 7351246, at *6 n.9 (W.D. Tex. Dec. 14, 2020); *Kirsch v. Aspen Am. Ins. Co.*, 2020 WL 7338570, at *5 n.2 (E.D. Mich. Dec. 14, 2020).

## ORDER

For the foregoing reasons, the court <u>ALLOWS</u> the motion to dismiss in its entirety. The Clerk will enter judgment for General Star and close the case.

SO ORDERED.

/s/Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE